FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
08/01/2023
CLERK'S OFFICE
AT BALTIMORE
BY O.L., DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO.** ___PJM-23-262___ |
| | * | |
| **CORPORACIÓN FINANCIERA** | * | **(Conspiracy to Violate the Foreign** |
| **COLOMBIANA S.A.** | * | **Corrupt Practices Act, 18 U.S.C.** |
| | * | **§§ 371 and 3551 *et seq.*)** |
| **Defendant** | * | |
| | * | |

*******

## INFORMATION

### COUNT ONE
### (Conspiracy to Violate the Foreign Corrupt Practices Act)

The United States charges that:

### Introduction

At times material to this Information:

1.     The Foreign Corrupt Practices Act of 1977 ("FCPA"), as amended, Title 15, United States Code, Sections 78dd-1, *et seq*., was enacted by Congress for the purpose of, among other things, making it unlawful to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value, directly or indirectly, to a foreign government official for the purpose of obtaining or retaining business for, or directing business to, any person.

2.     Defendant **CORPORACIÓN FINANCIERA COLOMBIANA S.A.** ("**CORFICOLOMBIANA**") was a Colombian financial services institution based in Bogotá, Colombia that was majority owned and controlled by Grupo Aval Acciones y Valores S.A. ("Grupo Aval"), a Colombian holding company also headquartered in Bogotá, Colombia.   Since

1

in or about March 2011, Grupo Aval had a class of securities registered pursuant to Section 12 of the Securities Exchange Act of 1934 (Title 15, United States Code, Section 78l) and was required to file periodic reports with the U.S. Securities and Exchange Commission. Accordingly, during the relevant time period, Grupo Aval was an "issuer" as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-1.

3.      During the relevant time period, **CORFICOLOMBIANA** was an agent of an issuer, Grupo Aval, as that term is used in the FCPA, Title 15, United States Code, Section 78dd-1.

4.      During the relevant time period, Estudios y Proyectos del Sol SAS ("Episol") was a wholly-owned and controlled subsidiary of **CORFICOLOMBIANA**.  Episol was the principal entity that carried out the relevant infrastructure projects described herein on behalf of **CORFICOLOMBIANA**.

5.      During the relevant time period, Odebrecht S.A. was a Brazilian holding company that, through various operating entities, conducted business in multiple industries, including engineering, construction, infrastructure, energy, chemicals, utilities, and real estate.  Odebrecht had its headquarters in Salvador, state of Bahia, Brazil, and operated in 27 other countries, including Colombia and the United States.

6.      During the relevant time period Concesionaria Ruta del Sol S.A.S. ("CRDS") was a joint venture comprised of three companies: Odebrecht, as the majority participant, and **CORFICOLOMBIANA**, through Episol, together with a third company, as the minority participants.  CRDS bid for and won large infrastructure projects with the Colombian government.

2

7.      Construction Consortium Ruta del Sol ("Consol") was a consortium comprised of three companies: Odebrecht as the majority participant and **CORFICOLOMBIANA**, through Episol, together with a third company, as the minority participants.   Consol was the construction company that executed the large infrastructure projects awarded by the Colombian government to CRDS.

8.      "Corficolombiana Executive," an individual whose identity is known to the United States and **CORFICOLOMBIANA**, was a Colombian citizen who served as a high-level executive of **CORFICOLOMBIANA** from in or about 2008 until in or about 2016.   During that time, **Corficolombiana Executive** served as the key point person for Odebrecht executives with respect to **CORFICOLOMBIANA**'s and Episol's involvement with CRDS and Consol.

9.      "Odebrecht Executive 1," an individual whose identity is known to the United States and **CORFICOLOMBIANA**, was a Brazilian citizen who served as an executive of Odebrecht in Colombia from in or about 2009 until in or about 2012.   During that time, Odebrecht Executive 1 served as the key point person for Odebrecht's involvement with CRDS and Consol.

10.      "Odebrecht Executive 2," an individual whose identity is known to the United States and **CORFICOLOMBIANA**, was a Brazilian citizen who served as an executive of Odebrecht in Colombia from in or about 2012 until in or about 2016.   During that time, Odebrecht Executive 2 served as the key point person for Odebrecht's involvement with CRDS and Consol.

11.      "Colombian Official 1," an individual whose identity is known to the United States and **CORFICOLOMBIANA**, was a high-ranking government official in the legislative

branch of the Colombian government between in or about 2010 and in or about 2017. Colombian Official 1 was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-1(f)(1)(A).

12.     "Colombian Official 2," an individual whose identity is known to the United States and **CORFICOLOMBIANA**, was an executive at Colombia's state-owned infrastructure agency Agencia Nacional de Infraestructura ("ANI"), between in or about 2011 and in or about 2017.  Colombian Official 2 was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-1(f)(1)(A).

13.     "Colombian Official 3," an individual whose identity is known to the United States and **CORFICOLOMBIANA**, was a high-ranking official in the executive branch of the Colombian government between in or about 2010 and in or about 2018.   Colombian Official 3 was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-1(f)(1)(A).

14.     "Intermediary 1," an individual whose identity is known to the United States and **CORFICOLOMBIANA**, was a Colombian lobbyist.

15.     "Intermediary 2," an individual whose identity is known to the United States and **CORFICOLOMBIANA**, was a Colombian lobbyist.

16.     "U.S. Financial Institution," is a multinational investment bank and financial services holding company headquartered in the United States.

### Overview of the Bribery Scheme

17.     Between in or about 2012 and in or about 2015, **CORFICOLOMBIANA** and Episol, through Corficolombiana Executive, together with others, including Odebrecht,

4

Odebrecht Executives 1 and 2, and Intermediaries 1 and 2, knowingly and willfully conspired and agreed with others to corruptly offer and pay more than $23 million in bribes to, and for the benefit of, Colombian government officials, including Colombian Official 1, Colombian Official 2, and Colombian Official 3, to secure improper advantages in order to obtain and retain business for **CORFICOLOMBIANA**, specifically, to win a contract from ANI for Consol and CRDS to construct and operate a highway toll road in Colombia known as the "Ocaña-Gamarra Extension."

A. Background

18.      In or about 2009, **CORFICOLOMBIANA**, through Episol, agreed with Odebrecht to form CRDS and Consol in order to bid for large public contracts with the Colombian government.

19.      In or about 2009, CRDS bid for and won a major highway project from the Colombian government to construct approximately 528 kilometers of highway in northern Colombia ("Ruta del Sol Sector II").   Ruta del Sol Sector II was part of a larger highway project in Colombia, which was called Ruta del Sol.   In or about 2011, Consol began construction on Ruta del Sol Sector II.

20.      In or about 2012, Corficolombiana Executive met with Odebrecht Executive 1 and Odebrecht Executive 2 in Colombia.   The purpose of the meeting was to introduce Odebrecht Executive 2 to Corficolombiana Executive.   In this meeting, it was agreed that Corficolombiana Executive would serve as the point person for any discussions and agreements pertaining to bribe payments that would need to be made to Colombian government officials.

B. Agreement with Intermediary 1 to Pay Bribes to Win the Ocaña-Gamarra Extension

5

21.     In or about 2012, Odebrecht Executive 1 introduced Odebrecht Executive 2 to Intermediary 1.   At this meeting, Intermediary 1 informed Odebrecht Executive 2 that Intermediary 1 could help CRDS win projects in Colombia.   In subsequent meetings with Intermediary 1, Odebrecht Executive 2 learned that Intermediary 1 would help CRDS win projects by making bribe payments to Colombian government officials.

22.     In or about 2012, the government of Colombia contacted CRDS and requested a proposal for the Ocaña-Gamarra Extension, a project to construct and operate a highway toll road that intersected with the Ruta del Sol Sector II portion of the larger Ruta del Sol project. The value of the Ocaña-Gamarra Extension contract was approximately $350 million.

23.     In or about early 2013, Odebrecht Executive 2 met several times with Intermediary 1, whom Odebrecht Executive 2 understood had close relationships with Colombian government officials who had authority over the decision to award the Ocaña-Gamarra Extension.   At the meetings, Intermediary 1 and Odebrecht Executive 2 agreed that CRDS would pay a bribe equal to approximately five percent of the total value of the Ocaña-Gamarra Extension in order to ensure that CRDS won the contract.

24.     Following the meetings between Odebrecht Executive 2 and Intermediary 1, Odebrecht Executive 2 informed Corficolombiana Executive of Odebrecht Executive 2's agreement   with Intermediary 1, and Corficolombiana Executive agreed with the plan to make bribe payments equaling five percent of the total value of the Ocaña-Gamarra Extension through Intermediary 1 in order to ensure that the Colombian government awarded the contract to CRDS.

25.     Corficolombiana Executive insisted that the bribe payments not be made by **CORFICOLOMBIANA**, but rather by Odebrecht, CRDS or Consol.   Corficolombiana

Executive ultimately agreed that **CORFICOLOMBIANA**, through Episol, would pay its portion of the bribe payments by either reimbursing Odebrecht or paying its percentage directly through CRDS or Consol.

26.     In order to execute the bribe scheme, Corficolombiana Executive and Odebrecht Executive 2 caused Consol and CRDS to enter into fictitious contracts with companies associated with Intermediary 1.

27.     In total, Corficolombiana Executive and Odebrecht Executive 2 caused Consol and CRDS to make payments totaling approximately $16.5 million through the companies associated with Intermediary 1.   In turn, Intermediary 1 passed along a portion of those funds to Colombian Official 1 and Colombian Official 2 to ensure that CRDS won the bid for the Ocaña-Gamarra Extension.   For example, on or about June 25, 2015, Corficolombiana Executive and Odebrecht Executive 2 caused CRDS to transfer approximately $2.7 million dollars, through U.S. Financial Institution, to a company associated with Intermediary 1.   A portion of these funds was passed along as a bribe to Colombian Official 1.

C.   Agreement with Intermediary 2 to Pay Bribes to Win the Ocaña-Gamarra Extension

28.     In or about 2012, Odebrecht Executive 1 introduced Odebrecht Executive 2 to Intermediary 2.   At this meeting, Intermediary 2 informed Odebrecht Executive 2 that, in order to win construction business in Colombia, it would be necessary to make bribe payments through lobbyists.

29.     In or about 2013, Odebrecht Executive 2 agreed with Intermediary 2 to make payments of approximately $3.5 million to Intermediary 2 to ensure that the Colombian government awarded the Ocaña-Gamarra Extension contract to CRDS.

30.     In order to effectuate the bribery scheme, in or about March 2014, Corficolombiana Executive, through Episol, and Odebrecht Executive 2 caused CRDS to enter into a fictitious contract with a company associated with Intermediary 2.

31.     In total, Corficolombiana Executive, through Episol, and Odebrecht Executive 2 caused Odebrecht and CRDS to make payments totaling approximately $3.5 million to a company associated with Intermediary 2 with the understanding that, in turn, Intermediary 2 would pay a portion of those funds as a bribe to Colombian Official 1 in order to ensure that the Colombian government awarded the Ocaña-Gamarra Extension contract to CRDS.

D.   Agreement to Pay Bribes to Colombian Official 3

32.     In or about May 2014, Corficolombiana Executive requested that Odebrecht Executive 2 attend a meeting with Colombian Official 3 on behalf of CRDS.

33.     At the meeting, Odebrecht Executive 2 agreed with Colombian Official 3 to make bribe payments for the benefit of Colombian Official 3.

34.     Odebrecht Executive 2 understood that the purpose of the payments to benefit Colombian Official 3 was to ensure that CRDS retained the Ocaña-Gamarra Extension contract with the Colombian government.

35.     In or about 2014 and 2015, Corficolombiana Executive, through Episol, and Odebrecht Executive 2 caused Consol and CRDS to make bribe payments of approximately $3.4 million for the benefit of Colombian Official 3 through third party companies.

**The Conspiracy**

36.     From in or about 2012 and continuing through in or about 2015, in the District of Maryland and elsewhere, the defendant,

**CORFICOLOMBIANA,**

together with others, did knowingly and willfully conspire to commit an offense against the

United States, to wit: being an agent of an issuer, to make use of the mails and means and

instrumentalities of interstate commerce corruptly in furtherance of an offer, payment, promise

to pay, and authorization of the payment of any money, offer, gift, promise to give, and

authorization of the giving of anything of value to a foreign official and to a person, while

knowing that all or a portion of such money and thing of value would be and had been offered,

given, and promised, directly and indirectly, to a foreign official, for purposes of:

(i) influencing acts and decisions of such foreign official in his or her official capacity;

(ii) inducing such foreign official to do and omit to do acts in violation of the lawful duty of

such official; (iii) securing any improper advantage; and (iv) inducing such foreign official to

use his or her influence with a foreign government and agencies and instrumentalities thereof to

affect and influence acts and decisions of such government and agencies and instrumentalities,

in order to assist **CORFICOLOMBIANA** and others in obtaining and retaining business for

and with, and directing business to, **CORFICOLOMBIANA** and others, in violation of Title

15, United States Code, Section 78dd-1(a).

**Manner and Means of the Conspiracy**

37.     The manner and means by which **CORFICOLOMBIANA**, CORFICOLOMBIA

Executive, Episol, Odebrecht, Odebrecht Executive 1, Odebrect Executive 2, and others sought

to accomplish the objects of the conspiracy included, among other things, the following:

38.     To win a highway project related to the Ruta del Sol project, known as the Ocaña-

Gamarra Extension, **CORFICOLOMBIANA** and Episol, through Corficolombiana Executive,

9

Odebrecht, and their co-conspirators, made bribe payments through fictitious contracts entered into by CRDS and Consol with companies associated with Intermediary 1 and Intermediary 2.

39.     In carrying out the scheme, Corficolombiana Executive caused **CORFICOLOMBIANA** and Episol, through CRDS and Consol, to utilize the means and instrumentalities of interstate commerce, including wires.

### Overt Acts

40.     In furtherance of the conspiracy, and to achieve the objects thereof, at least one of the conspirators committed, and caused to be committed, in the United States and elsewhere, at least one of the following overt acts, among others:

a.      In or about March 2014, Corficolombiana Executive and Odebrecht Executive 2 caused Consol to transfer approximately $1.2 million dollars to a company associated with Intermediary 1.   A portion of these funds was passed along as a bribe to Colombian Official 1.

b.      In or about December 2014, Corficolombiana Executive and Odebrecht Executive 2 caused CRDS to transfer approximately $1.2 million dollars to a company associated with Intermediary 2.   A portion of these funds was passed along as a bribe to Colombian Official 1.

c.      In or about January 2015, Corficolombiana Executive and Odebrecht Executive 2 caused CRDS to transfer approximately $1.1 million dollars to a company associated with Intermediary 2.   A portion of these funds was passed along as a bribe to Colombian Official 1.

d.      On or about on or about June 25, 2015, Corficolombiana Executive and

Odebrecht Executive 2 caused CRDS to transfer approximately $2.7 million dollars, through

U.S. Financial Institution, to a company associated with Intermediary 1.   A portion of these

funds was passed along as a bribe to Colombian Official 1.


18 U.S.C. § 371
18 U.S.C. § 3551 *et seq.*


Date: August 1, 2023

*Erek L. Barron/*

Erek L. Barron
United States Attorney
District of Maryland


Glenn S. Leon
Chief, Fraud Section
Criminal Division
U.S. Department of Justice